IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REGINALD D. MARABLE, SR.,      )
                               )
        Plaintiff,             )
                               )
v.                             )          CASE NO. 2:11-cv-563-CG-B
                               )
MARION MILITARY INSTITUTE      )
and COL. THOMAS L. TATE, in    )
his individual and official    )
capacities,                    )
                               )
        Defendants.            )

## ORDER

This matter is before the court on the motion for summary judgment of the defendants, Marion Military Institute ("MMI"), and Col. Thomas L. Tate ("Tate"), in his individual and official capacities (collectively, "the defendants"). (Doc. 69). The defendants and the plaintiff, Reginald D. Marable, Sr. ("Marable"), have filed briefs and evidentiary materials in support of their respective positions, and the motion is now ripe for resolution. After careful consideration, the court concludes that the defendants' summary judgment motion is due to be **GRANTED**. For the reasons enumerated below, the defendants' Objections and Motion to Strike and for Sanctions is hereby **DENIED** as **MOOT**.

## I.   FACTUAL BACKGROUND

Marable has asserted the following claims: (1) a retaliation claim against MMI pursuant to Title VII and 42 U.S.C. § 1981; (2) a First

Amendment retaliation claim against both defendants pursuant to 42 U.S.C. § 1983; (3) a claim against MMI for a hostile work environment pursuant to Title VII and § 1981; (4) an equal protection claim against both defendants pursuant to § 1983; (5) a failure to promote claim against MMI pursuant to Title VII and § 1981; and (6) a state law claim against MMI for negligent and wanton training and supervision.  See Doc. 1 at 9-15.  Marable seeks money damages, including punitive damages, and injunctive relief.  Id. at 15-16.

MMI is an Alabama state college and military educational college. (Doc. 72 at 2).  From August 2008 until May 2010, Marable was employed by MMI as a Trainer Advisor Counselor Officer ("TAC officer").  (Doc. 1 at 3, 7). His job responsibilities included training cadets in military and life skills, physical training, and providing general "counseling and assistance" to cadets.  (Doc. 80-1 at 31-32).  Marable was also responsible for cadet discipline for all cadets assigned to his company.  Id. at 32.  Marable was employed pursuant to a one-year employment contract for the 2008-09 academic year, which MMI renewed for the 2009-10 academic year.  (Doc. 72 at 2, 3).  It is undisputed that, at all relevant times, Marable was a probationary employee.  (Doc. 72 at 11).

Marable's supervisor at MMI was the Commandant of Cadets, Col. Thomas L. Tate, who was "in charge of ensur[ing] the health, safety, welfare, and good order and discipline of the entire student population," and who

supervised all TAC officers.  Id. at 2.  MMI's president was Col. David

Mollohan, USMC (ret.), who came to MMI in August 2009.  Id.

Marable's Complaint paints an unflattering portrait of racial

discrimination at MMI during the time he was employed there.  Specifically,

Marable asserts that he observed that African-American cadets were

disciplined more harshly for less serious infractions while white cadets were

disciplined less harshly for more serious infractions.  (Doc. 1 at 4).  Marable

also alleges that Tate personally disciplined black students for "mingling"

with white students and directed them to "stay with their own kind."  Id.  He

also claims that on one occasion he heard Tate say that his (Tate's) daughter

"would never be with a nigger," (Doc. 80-1 at 52), and recalls another occasion

when he heard Tate refer to a black cadet as a "thug," and when questioned

about his use of the term said, "well he is black isn't he?"  Id.

Marable claims that he addressed his concerns regarding the disparate

treatment of African-American cadets with several colleagues and

supervisors.  (Doc 1 at 5).  For example, he testified that he complained to

Tate at some point before November 2009 about both the treatment of

minority cadets and "his own personal feelings of discrimination."  (Doc. 80-1

at 42).  Marable also asserts that in April 2010, he and another African-

American faculty member approached Tate and Mollohan and "raised

concerns regarding Tate and MMI's disparate treatment of African-American

students."  (Doc. 1 at 5).  He also claims that he had a conversation about

3

Tate with Mollohan shortly after the 2009-10 academic year began.  (Doc. 80-1 at 44).

 While the first year of Marable's employment at MMI saw him receive high performance review ratings from Tate, see Doc. 84-1 at 1, his second year was more turbulent.  In September 2009, Marable wrote a note to Tate regarding two cadets who displayed disrespectful conduct towards him, and referenced a confrontation with a third cadet, who had to be restrained.  (Doc. 86-14).  Marable wrote that "I WILL NOT TOLERATE (IT.)  Cadets coming @ me. I WILL DEFEND myself this year."  Id. (emphasis in original).  Later the same month, Marable was accused of hazing cadets and placed on administrative leave, (Doc. 85-2), pending an investigation which ultimately cleared him of the hazing accusations, but which found that he had violated MMI training policies.  (Doc. 85-6 at 4-8).  At the conclusion of the hazing investigation in October 2009, Mollohan issued a "letter of formal counseling" to Marable, which stated Mollohan's concerns over "a pattern of conduct that appears to include recurring failure to comply with orders given [and] policies established …"  (Doc. 70 at 226-27).  One month later, a dispute arose between Tate and Marable over grooming standards for TAC officers, (Doc. 70-3 at 45-46), after which Mollohan stated that Marable "displayed a total disrespect for directives which reinforced my lack of trust and confidence in Mr. Marable's performance and conduct."  (Doc. 70-1 at 6).  On November 29, 2009, Marable emailed Mollohan and requested mediation between himself

and Tate.  (Doc. 70-3 at 48).  Mollohan directed Susan Stevenson, MMI's Executive Vice President, and Janice McGee, MMI's Director of Human Resources, to meet with Marable.  (Doc. 80-1 at 54).  Tate did not attend.  Id.

In April 2010, Tate recommended to Mollohan against renewing Marable's employment contract for the following academic year.  (Doc. 72 at 11).  Mollohan agreed, and placed Marable on administrative leave with full pay and benefits until his contract terminated on May 31, 2010.  (Doc. 1 at 7; Doc. 72 at 11).

Marable claims that the events of his troubled second year at MMI were the result of retaliation stemming from his "opposition and complaints regarding racially disparate enforcement of student policy and procedures at MMI." (Doc. 1 at 5).  He claims that the hazing allegations originated with Tate and were false.  See Doc. 95 at 3, 19.  He also claims that he was the only TAC officer who was required to report to the commandant's office upon his arrival on campus, (Doc. 80-1 at 54); that Tate did not allow him to take four days of FMLA leave when his mother-in-law was dying of cancer, id.; and that Tate reprimanded him for allegedly unauthorized leave and absences which, in fact, were legitimate.  (Doc. 95 at 5).

Additionally, Marable alleges that in October 2009, he applied for an admissions counselor position at MMI for which he was well-qualified.  (Doc. 1 at 5).  Marable was interviewed as one of three finalists for the position in November 2009.  Id.; Doc. 72 at 15.  Marable claims that the interview panel

considered him the best candidate for the position. (Doc. 80-1 at 38). Nevertheless, a white candidate, Harry Howell, who Marable asserts was less qualified for the position, was selected. (Doc. 1 at 6).

Shortly before his contract with MMI expired, Marable filed an EEOC charge alleging race and age discrimination and retaliation on May 27, 2010. (Doc. 70-3 at 40). Approximately 8 months later, on February 4, 2011, Marable filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Alabama. (Doc. 70-13 at 2). Marable filed the instant lawsuit in the United States District Court for the Northern District of Alabama on July 1, 2011. See Doc. 1 at 1. The case was then transferred to the United States District Court for the Southern District of Alabama on September 29, 2011. See Doc. 11.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v.

Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  Howard v. BP Oil Co., 32 F.3d 520, 524 (11th

Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

Otherwise stated, the non-movant must "demonstrate that there is indeed a

material issue of fact that precludes summary judgment." Clark v. Coats &

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may

not rely merely on allegations or denials in its own pleading; rather, its

response .... must be by affidavits or as otherwise provided in this rule be set

out specific facts showing a genuine issue for trial." Vega v. Invsco Group,

Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence

supporting the [non-moving] party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party."

Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

"[T]he nonmoving party may avail itself of all facts and justifiable inferences

in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d

994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III.   APPLICATION OF JUDICIAL ESTOPPEL

On May 27, 2010, Marable filed a charge of discrimination against

MMI with the EEOC.  (Doc. 88-9).  Eight months later, on February 4, 2011,

he filed a bankruptcy petition (the "Petition") with the United States

Bankruptcy Court for the Northern District of Alabama.  (Doc. 70-13).

However, Marable did not disclose his pre-existing EEOC claim as required on either the Petition's Debtor's Schedule ("Debtor's Schedule") or the Statement of Financial Affairs ("SFA").  On April 6, 2011, the EEOC issued a right to sue letter which stated that it was "unable to conclude that the information obtained establish[ed] violations of [anti-discrimination] statutes," and further informed Marable that he had 90 days in which to file suit.  (Doc. 88-10 at 1).  Marable subsequently filed the instant lawsuit on July 1, 2011.  (Doc. 1).

MMI now argues that the doctrine of judicial estoppel prevents Marable from pursuing his claim in this court, having sworn to the Bankruptcy court that no claims existed.  (Doc. 71 at 17).  Marable, on the other hand, argues that "[his] claims against MMI arose after his initial filing," and that "[h]is failure to amend was inadvertent."  (Doc. 95 at 6).

## A.      Statement of the Law

"Judicial estoppel is an equitable doctrine invoked at a court's discretion." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001).  The doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  New Hampshire, 532 U.S. at 749 (internal quotations omitted).  Although there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," the U.S. Supreme Court has elucidated

several factors which typically inform the decision whether or not to apply judicial estoppel in a particular case.  Id. at 751.  "First, a party's later position must be clearly inconsistent with its earlier position."  Id. at 750 (string citation omitted).  "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled…'"  Id. (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982).  "[T]hird…is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  Id. at 751

Courts in the Eleventh Circuit consider two additional factors.  "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system."  Burnes, 291 F.3d at 1285.  However, these two factors are not "inflexible or exhaustive," and therefore the court must give due consideration to all of the circumstances of a particular case when considering the applicability of judicial estoppel. Id. at 1286.

As a general matter, "while privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required." Id.  This is because judicial estoppel protects the integrity of the judicial system, and not

that of the litigants. Id. (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al., 81 F.3d 355, 362 (3rd Cir. 1996).

A party who is under Chapter 13 or Chapter 7 bankruptcy protection from creditors is under a continuing duty to disclose all assets and potential assets to the bankruptcy court.  Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) ( "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change.") (citing Burnes, 291 F.3d at 1286).

## B.  Analysis

### 1.)  Statement Submitted Under Oath In a Prior Proceeding

The court takes the electronic signatures on the Petition at face value and finds as a matter of undisputed fact that Marable submitted his SFA and Debtor's Schedule under oath to the Bankruptcy Court on February 4, 2011, which predates the instant case.  (Doc. 70-13 at 15).  Therefore, the matter turns upon the question of intent.

### 2.)  Intent

Judicial estoppel may be applied only in situations involving intentional manipulation of the courts, and not when the litigant's contradictory positions are "the product of inadvertence or mistake."  Burnes, 291 F.3d at 1287 (quoting Matter of Cassidy, 892 F.2d 637, 642 (7th Cir. 1990)).  In cases where a debtor fails to disclose a claim or potential claim in

a bankruptcy proceeding, the court will find the failure inadvertent only when the debtor either (i) lacks knowledge of the undisclosed claim or (ii) has no motive for its concealment. <u>Burnes</u>, 291 F.3d at 1287 (<u>citing</u> <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197, 210 (5th Cir. 1999). Otherwise, intent may be inferred. <u>Id.</u>

### (a) Knowledge of Claims

Marable argues that his claims against MMI arose only after he filed for bankruptcy. (Doc. 95 at 6). However, this assertion is undermined by the fact that Marable brought his EEOC charge on May 27, 2010 – more than eight months before he filed the Petition on February 4, 2011. (Doc. 88-9), (Doc. 70-13 at 2). It is of no import that Marable did not file a *lawsuit* before filing his Petition, because the EEOC claim constitutes "administrative proceedings" and "[o]ther contingent and unliquidated claims" that Marable was required to disclose in his SFA and Debtor's Schedule. <u>Casanova v. Pre Solutions, Inc.</u>, 228 Fed. Appx. 837, 841 (11th Cir. 2007). "The property of [the] bankruptcy estate includes all *potential* causes of action existing at the time petitioner files for bankruptcy." <u>Id.</u> (quoting <u>Barger v. City of Cartersville</u>, 348 F.3d 1289, 1293 (11th Cir. 2003).

Furthermore, the court notes that Marable's own complaint and sworn affidavit flatly contradict his assertion that he had no claim at the time of his bankruptcy filing, because Marable alleges that Tate informed him on April

21, 2010, that he was being placed on administrative leave until the end of his contract term on May 31, 2010.  (Doc. 1 at 7; Doc. 88-26 at 11).

Secondly, Marable also claims that "his failure to amend was inadvertent," (Doc. 95 at 6), and cites his own sworn affidavit (Doc. 88-26) for factual support.  In the affidavit, Marable makes the puzzling claim that "[m]y attorney advised me that an amended schedule was not necessary due to my intention to file a Motion to Dismiss the petition due to changed circumstances.  On or about February 2011, the Petition to Dismiss was filed." (Doc. 88-26 at 13).  This assertion is simply not credible.  The Bankruptcy Court docket reflects no motion to dismiss filed by Marable, either in February 2011 or at any other time.  See In re Marable, Case No. 11-70235-CMS13 (Bankr. N.D. Ala.).  In fact, the only motions to dismiss listed in the bankruptcy docket were filed by the Bankruptcy Trustee because Marable failed to make plan payments as required.  See id. at Doc. 55 and 70.  The only motions that were withdrawn were the Trustee's motions.  Id.   Nor does the bankruptcy docket contain a "Petition to Dismiss."  Id.  The fact that these misstatements of fact appear in Marable's second opposition brief (the first one having been stricken for procedural failings) does not help his credibility, to put it mildly.

For these reasons, the court finds that Marable had knowledge of his claim at the time he filed the Petition.

### (b) Motive for Concealment

The issue of intent thus hinges on whether Marable had a motive to conceal his discrimination claim.  Marable argues that "[his] open disclosure is evident and further, there is no evidence of concealment."  (Doc. 95 at 6-7).  However, the record does not evidence anything remotely like "open disclosure" – to the contrary, the court notes a striking lack of disclosure on Marable's part until his hand was forced at the last possible moment.  Marable not only failed to amend his Petition after the EEOC issued a right to sue letter on April 6, 2011, (Doc. 88-10), but he also waited more than two weeks after MMI raised the issue of judicial estoppel in its summary judgment motion before finally amending the Petition.  See Doc. 71 at 16-17; see also In re Marable, supra, Doc. 80 at 3.

Furthermore, Marable appeared to gain an advantage when he failed to list his EEOC claim on his Debtor's Schedule because, by omitting the claim, he could keep any proceeds resulting from his claim for himself and not have them become part of the bankruptcy estate.  See Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1296 (11th Cir. 2003); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010).

### (c)   Intent By Inference

Marable puts forward a perfunctory and conclusory argument that, based upon his "open disclosure … intent cannot be inferred."  (Doc. 95 at 7).  The court addressed the lack of factual support for Marable's claims of open

14

disclosure, supra.  Similarly, there is no legal support for Marable's assertion that intent to conceal cannot be inferred.  Although he cites several cases dealing with judicial estoppel, none are availing.  In Roots v. Morehouse School of Medicine, Inc., 2009 WL 4798217 (N.D. Ga. 2009), none of the three plaintiffs had ongoing administrative claims prior to filing for bankruptcy protection, a fact which the Roots court noted.  See id. at 4 ("The failure to amend does not create the same inference as the case where the debtor has knowledge of or has filed his non-bankruptcy claim prior to filing for Chapter 13 bankruptcy.").  The same is true of the plaintiffs in Snowden v. Fred's Stores of Tennessee, Inc., 419 F.Supp.2d 1367, 1373 (M.D. Ala. 2006) and Lewis v. Weyerhauser Co., 141 Fed. Appx. 420, 426 (6th Cir. 2005).  Marable, by contrast, filed his EEOC complaint eight months prior to filing his bankruptcy petition, see Doc. 88-9 and Doc. 70-13, and failed to amend his Debtor's Schedule until two weeks after the opposing party in his lawsuit raised the issue of judicial estoppel in its summary judgment motion.  See Doc. 71 at 16-17.  See also In re Marable, supra, Doc. 80 at 3.  This behavior is easily distinguishable from the "affirmative steps to fully inform the trustee and the bankruptcy court" that the Sixth Circuit discussed in Lewis.  See Lewis, 141 Fed. Appx. At 426.

Accordingly, the court finds that Marable's knowledge of his discrimination claim and his motive to conceal it are sufficient evidence from which to infer his intentional manipulation.  See Burnes, 291 F.3d at 1287.

The court finds further that the doctrine of judicial estoppel is appropriate in this case, where Marable failed to disclose his administrative claim before the EEOC to the Bankruptcy Court, and then failed to amend his Petition until after the defendants raised the issue of judicial estoppel at summary judgment.  Marable is therefore estopped from collecting monetary damages from the defendants in the instant action.

## IV.    THE CASE ON THE MERITS

The doctrine of judicial estoppel applies only to Marable's claims for monetary damages, and does not bar his claims for injunctive relief.  See Burnes, 291 F.3d at 1289;  Casanova v. Pre Solutions, Inc., 228 Fed. Appx. 837, 841 (11th Cir. 2007).  Therefore, the court turns to Marable's claims on the merits.

## A.    EVIDENTIARY ISSUES

### 1.)    Marable's Affidavit (Doc. 88-26)

As a preliminary matter, the court notes that Marable's sworn affidavit (Doc. 88-26) is larded with statements which constitute inadmissible hearsay, utterly conclusory statements of no probative value, and statements which are based upon his personal belief rather than his personal knowledge. See Doc. 88-26.  To be considered on summary judgment, affidavits or declarations must be based on personal knowledge, cannot be conclusory, and must contain information that can be reduced to admissible form at trial. See, e.g., Corwin v. Walt Disney Co., 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even

on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge.") (citation omitted); <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (citation omitted); <u>Rowell v. BellSouth Corp.</u>, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").

Consequently, the court hereby disregards the following paragraphs in Marable's affidavit because they consist of conclusory statements that contain no probative value: paragraph 33 (Marable's claim that Tate's recommendation of an investigation was "harassment and retaliatory"), paragraph 35 (Marable's blanket statement that Howell "did not meet the minimum qualifications for the position"), paragraph 36 (Marable's unadorned statement that "I was the best qualified candidate for the position of Admission Counselor ..."), paragraph 39 ("the harassment by Tate became more severe and pervasive"), paragraph 57 (Marable "felt" that reprimands were "... retaliatory"), paragraph 66 (Marable "observed a pattern of retaliatory and discriminatory conduct by [defendants]"), paragraph 67 (unadorned allegation that "Jackson and Burns ... were transferred from their positions as a result of their complaints," and that "Hastings and Steiger were terminated as a result of their complaints."), and paragraph 70 (Marable's unsubstantiated claim of knowledge of a "pattern of retaliation" by

defendants which caused employees to refrain from stating concerns about discrimination).  <u>See</u> Doc. 88-26.

The court further disregards the following paragraphs from Marable's affidavit because they are based upon his belief rather than his personal knowledge, as required by Fed.R.Civ.P. 56(c)(4): paragraph 33 (stating Marable's belief that his being targeted for investigation was "harassment and retaliatory"), paragraph 68 (stating Marable's belief that certain adverse action taken against him and other employees was based upon their complaints of discrimination), and paragraph 69 (stating Marable's belief that adverse action taken against him and other employees was retaliatory).

Additionally, the court disregards the following paragraphs from Marable's affidavit because they contain inadmissible hearsay, which Marable has not indicated is capable of being reduced to an admissible form: paragraph 13 (claiming that a female cadet "indicated to Tate that she was not offended by the [dropped condom] incident"), paragraph 36 (claiming that members of the Selection Committee advised him that he was the best qualified candidate for the position of Admissions Counselor), paragraph 37 (quoting Dennis Hastings as stating that "Tate doesn't want you to get this position."), paragraph 56 (alleging that Stevenson directed Marable to "obey" Tate without question), paragraph 66 (claims that Polly Burns and Christine Jackson, for whom no affidavit or testimony was submitted, reported concerns of discrimination).

### 2.)  Affidavits of Daniel Steiger and Marcus Thomas

When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest. See Lee v. National Life Assurance Co., 632 F.2d 524, 529 (5th Cir.1980). Here, however, the court finds the affidavits of Daniel Steiger and Marcus Thomas to be so riddled-through with irrelevant statements, conclusory assertions with no probative value, inadmissible hearsay, and statements based upon belief rather than personal knowledge, that both documents are due to be, and hereby are, stricken. See Pace v. Capobianco, 283 F.3d 1275, 1278-79 (11th Cir. 2002); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ( "This court has consistently held that conclusory allegations without specific supporting facts have no probative value"); Casiano v. Gonzales, 2006 WL 229956, *7 (N.D. Fla. 2006); Gaddis v. Russell Corp., 242 F. Supp.2d 1123, 1138 n. 12 (M.D. Ala. 2003) ("the favorable reviews of non-decisionmakers are irrelevant to the challenged employment action"); Mays v. Union Camp Corp., 114 F.Supp.2d 1233, 1244 (M.D. Ala. 2000); see also Corwin, supra, at 1249; Leigh, supra at 1217; and Rowell, supra at 800.

### 3.)  Repeated Violations of Local Rule 7.2(b)

The court also disregards a number of citations contained in Marable's opposition to summary judgment (Doc. 95) as violative of Local Rule 7.2(b). The court has addressed the evidentiary shortcomings of some of Marable's

supporting documents, <u>supra</u>.  But in addition to those shortcomings, Marable's opposition brief repeatedly cites documents in the record without indicating the specific page and paragraph numbers.  "A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."  <u>DeSilva v. DiLeonardi</u>, 181 F.3d 865, 867 (7th Cir. 1999).  Filing a large evidentiary record, making conclusory and opinion-laden references to exhibits in that record, and expecting the Court "to scour those exhibits with the faint hope of stumbling across a disputed issue of fact" is simply insufficient to comply with Local Rule 7.2.  <u>Henry v. City of Tallahassee</u>, 216 F.Supp.2d 1299, 1312 (N.D. Fla. 2002).  Local Rule 7.2(b) requires that, "if it is contended that there are material factual disputes, [the party opposing summary judgment] shall point out the disputed facts <u>appropriately referenced to the supporting document or documents filed in the action</u>."  This Marable has failed to do.  Accordingly, the court will disregard those citations to the record which indicate only an exhibit number but no relevant page and/or paragraph number.  <u>See</u> Doc. 95 at 1-5, ¶s 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, and ¶ 15 fn. 10.  <u>See also</u> <u>id.</u> at 6, 9-12, 14, 15, 17-20, 22-24, and 26.

**B.    TITLE VII AND § 1981 FAILURE TO PROMOTE AND RETALIATION CLAIMS (COUNTS I and V)**

Counts I and V of Marable's complaint are brought pursuant to Title VII and 42 U.S.C. § 1981 and consist of a retaliation claim (Count I) and a claim alleging racial discrimination based upon an alleged failure to promote

Marable to the position of admissions counselor (Count V).  See Doc. 1 at 9-10, 12-14.

### 1.)     Marable's Retaliation Claim (COUNT I)

#### (a)     Statement of the Law

A retaliation claim based on circumstantial evidence is analyzed according to the McDonnell Douglas framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (applying McDonnell Douglas-type analysis to retaliation claims).  The plaintiff bears the initial burden of establishing a prima facie case of retaliation, which he may do by demonstrating that (1) he engaged in statutorily-protected activity; (2) he suffered a materially adverse action; and (3) there was some causal relation between these two events.  Dixon v. The Hallmark Companies, Inc., 627 F.3d 849 (11th Cir. 2010).  The Eleventh Circuit construes the "causal link" element broadly, so as "to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286 (11th Cir. 2008) (quoting Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985)).

If a plaintiff establishes the prima facie elements of the claim, he raises a presumption that his race motivated his employer to treat him unfavorably.  Smith v. Lockheed-Martin Corporation, 644 F.3d 1321, 1325

(11th Cir. 2011) (citing <u>Tex. Dep't of Cmty. Affairs v. Burdine,</u> 450 U.S. 248, 254 (1981)).  The defendant then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action as an affirmative defense to liability.  <u>Id.</u>  If the defendant employer meets its burden, then the presumption of discrimination raised by the plaintiff's <u>prima facie</u> case is rebutted and thus disappears.  <u>Id.</u> at 1325-26.  The plaintiff must then prove that the reason provided by the employer is a pretext for prohibited retaliatory conduct.  <u>Id.</u> at 1326.

### (b)   MMI's Legitimate and Non-Discriminatory Reasons

In order to avoid a protracted dispute between the parties over the admissibility of a document which purports to establish that Marable complained to Mollohan about racially discriminatory employment practices (Doc. 88-7), the court hereby assumes for the sake of argument that Marable has established a <u>prima facie</u> case of retaliation.  Accordingly, the court begins its <u>McDonnell-Douglas</u> analysis with MMI's proffered non-discriminatory reasons for not renewing Marable's contract.

MMI argues that it did not renew Marable's contract because Marable's performance waned during the course of the 2009-10 academic year.  (Doc. 72 at 8).  Tate testified at his deposition that as early as January 2009 he was concerned about Marable's judgment and tendency to escalate confrontations with cadets.  Doc. 70-4 at 7 and 12.  Although Tate subsequently gave Marable a glowing evaluation at the end of the 2008-09

academic year, MMI points to what can only be described as an irate, handwritten note from Marable dated September 2009, which tends to support Tate's concerns and post-dates Marable's positive evaluation.  <u>See</u> Doc. 86-14 ("I WILL NOT TOLERATE (IT.) Cadets coming @ me. I WILL DEFEND Myself This Year.").  Mollohan's testimony also tends to corroborate Tate's concerns, if less vividly.  (Doc. 70 at 10).

By October 2009, a full six months before Marable was placed on administrative leave and seven months before his contract was allowed to expire, Mollohan sent Marable a letter of formal counseling (Doc. 70 at 226-27) which noted Mollohan's "concern[] that you have begun to establish a pattern of conduct that appears to include recurring failure to comply with orders given, policies established, and in effectively setting the appropriate example to our cadets of adherence to the highest standards of conduct."  <u>Id.</u> A dispute between Tate and Marable over grooming standards for TAC officers followed in November 2009, (Doc. 70-3 at 45-46), after which Mollohan stated that Marable "displayed a total disrespect for directives which reinforced my lack of trust and confidence in Mr. Marable's performance and conduct."  (Doc. 70-1 at 6).  Mollohan further testified that by the spring of 2010, he determined that there existed a "severe personality conflict" between Tate and Marable.  <u>Id.</u>  When Tate recommended against renewing Marable's employment contract, Mollohan concurred.  (Doc. 70 at 13.)  Mollohan also testified that, in addition to Tate's recommendation, he

was influenced by budgetary considerations in not renewing Marable's contract because it offered an opportunity to save payroll costs.  Id.

The reasons for not renewing Marable's employment contract, as stated by Mollohan and Tate in their respective depositions (Doc. 70 and Doc. 70-4) and in Mollohan's affidavit (Doc. 70-1 at 6), are perfectly legitimate and non-discriminatory.  Therefore, any presumption of discrimination is rebutted, and thus disappears.  Smith v. Lockheed-Martin Corporation, 644 F.3d at 1325-26.  The inquiry now proceeds to a "new level of specificity," whereby Marable must prove by a preponderance of evidence that the defendant's reason is a mere pretext for unlawful discrimination or retaliation.  Id. at 1326. (citations omitted).

### (c)    Pretext

A plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence."  Ritchie v. Industrial Steel, Inc., 426 Fed. Appx. 867, 872 (11th Cir. 2011) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).  However, "[a] legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination."  Worley v. City of Lilburn, No. 09–15537, 2011 WL 43543, at

*3 (11th Cir. Jan. 6, 2011).  Rather than "simply quarreling with the wisdom of [the employer's] reason," the plaintiff "must meet that reason head on and rebut it."  Ritchie, 426 Fed. Appx. at 872 (quotation omitted).  Furthermore, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs."  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010).

Instead of meeting MMI's reasons "head on" and attempting more fully to rebut them, Marable expends a great deal of energy arguing past MMI's legitimate, non-discriminatory reasons for not renewing his contract.  See Doc. 95 at 16-22.  First, Marable claims that MMI failed to provide him with its reasons for not renewing his contract, and vacillated when it was pressed to explain those reasons.  Id.  But, in his own brief, Marable himself cites three non-discriminatory reasons proffered by MMI – i.e., that Marable was "not the right fit;" that MMI administrators had "performance concerns" about Marable; and that there existed other "performance and budgetary issues."  (Doc. 95 at 18).

The "vacillation" to which Marable refers is really just an observation that MMI has cited more than one reason for not renewing Marable's contract, none of which are mutually exclusive.  The fact that MMI did not present Marable with all of its reasons simultaneously is of no import, because the existence of a possible additional non-discriminatory basis for an employee's termination does not necessarily prove pretext.  Tidwell v. Carter

<u>Products</u>, 135 F.3d 1422, 1428 (11th Cir. 1998); <u>see</u> <u>also</u> <u>Zaben v. Air</u>

<u>Products & Chem., Inc.</u>, 129 F.3d 1453, 1458-59 (11th Cir. 1997) ("Although

the company gave differing explanations for the selection of employees to be

discharged, saying on the one hand that seniority played no role in the

process and that only an employee's performance was considered while, on

the other hand, asserting that [the employee] was discharged because he had

the least seniority, its reasons are not ... necessarily inconsistent.").[1]

Marable also argues that evidence of pretext exists in MMI's "failure to

follow it's [sic] own customs, policies and procedures, and usual practices ..."

(Doc. 95 at 17).  What follows at this point in Marable's brief is conclusory

statement after conclusory statement, accompanied by multiple citations to

the evidentiary record which lack any explanation for how the cited portions

of the record support Marable's argument.  <u>Id.</u>  Marable does not even

identify in his brief which policies and procedures MMI is alleged to have

violated.  <u>Id.</u>  The court reviewed the cited excerpts of the Stevenson,

Mollohan, Tate, McGee, and Colburn depositions but found no discussion of

MMI policies or procedures regarding renewal of an employee's contract,

much less evidence that such policies were violated.  The court did <u>not</u> review

---

[1] The court also notes that Marable's accusation that MMI "adjusted their
reasons to include performance and budgetary issues" is without factual support.
(Doc. 95 at 18).  The cited portion of the EEOC file that Marable cites (Doc. 84 at 4)
does not address MMI's reasons for not renewing Marable's contract at all, much
less provide evidence that MMI "adjusted" them after the lawsuit was filed.
Similarly, the cited portion of Mollohan's testimony (Doc. 81 at 39, 57) simply does
not, in any way, support Marable's claim that Mollohan somehow concocted the
budgetary issue as a pretextual reason after the instant lawsuit was filed.

the 9 exhibits Marable cited in one string citation, amounting to 217 pages in total, for which he failed to provide a single page or paragraph number.  (Doc. 95 at 17).  Not only does this violate Local Rule 7.2(b) as indicated, supra, but it foists upon the court the onus of searching through hundreds of pages of exhibits in order to find facts which might support Marable's argument.  The court declines to do plaintiff's counsel's job for her.  "It is not the responsibility of this Court to root through the record like a pig in search of truffles to determine whether there is a factual basis" for Marable's claim of pretext.  Keaton v. Cobb County, 545 F.Supp.2d 1275, 1309 (N.D. Ga. 2008) (quoting Keach v. U.S. Trust Co., N.A., 245 F.Supp.2d 941, 945 (C.D. Ill. 2003).

Pointing to another alleged deviation from MMI's policies and procedures, Marable argues that Tate reprimanded him for authorized leave that he took and allegedly issued memoranda to him "without notice."  (Doc. 95 at 17-18).  But Marable offers no argument or legal support explaining how or why these allegations constitute evidence of pretext.  In the same vein, Marable offers no legal support for his puzzling statement that "unusual action taken by supervisors heightens suspicion of an unlawful motivation in the adverse actions taken against him screaming pretext." (Doc. 95 at 18).  Nor does Marable point to any case law for his assertion that "[p]robative weight should also be extended since Marable denied leave and

policy violations and asserts Defendants' asserted reasons for the adverse acts are false." Id.

Marable also argues that MMI's asserted "performance concerns" are undercut by a positive May 2009 performance review in which Tate described Marable as "extremely competent," (Doc. 84-2 at 2) lauded his "excellent performance," id., and cited him as "one of the top two TACs here at MMI." (Doc. 84-1 at 1).  However, evidence of Plaintiff's past good performance cannot be used now to show that later unsatisfactory performance in the 2009-10 academic year — cited as the principal reason for Marable's separation—is merely a pretext for discrimination.  See Cole v. Alabama Department of Forensic Sciences, 2011 WL 671683, *8 (S.D. Ala. 2011) (citing Muse v. N.Y. City Dep't of Hous. Pres. & Dev., No. 96–CV–6221 FB ASC, 2000 WL 1209427, at *4 (E.D.N.Y. Aug. 22, 2000) ("Prior good evaluations of the plaintiff's work performance alone cannot establish that later unsatisfactory evaluations are a pretext for unlawful discrimination.") (quoting Moorer v. Grumman Aerospace Corp., 964 F.Supp. 665, 674 (E.D.N.Y. 1997), overruled on other grounds).

The remainder of Marable's pretext argument consists of conclusory accusations of "disparate treatment," "increased scrutiny," "a general campaign to punish" Marable, and "other retaliatory acts" which contain citations to the record that either do not support the fact alleged[2] or violate

---

[2] For example, Marable cites Mollohan's and Tate's testimony to support his claim of disparate treatment regarding grooming standards.  (Doc. 95 at 20).  However,

Local Rule 7.2, as discussed extensively, supra.  While Marable may have felt harassed, annoyed, or offended by Tate's reprimands, that does not establish pretext.  The Eleventh Circuit has written that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules ... Title VII is not a shield against harsh treatment at the workplace." Nix v. WLCY Radio, 738 F.2d 1181, 1187 (11th Cir.1984) (citations and quotations omitted).

Accordingly, the court finds that Marable's argument and evidence fall well short of meeting his burden of establishing pretext.  Federal courts are not in the business of  judging whether employment decisions are prudent or fair.  Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  Rather, the court's sole concern is whether unlawful discriminatory animus motivates a challenged employment decision. Id. (citing Nix, 738 F.2d at 1187).  Marable has not shown that MMI administrators' stated concerns about his judgment and their complaints about his waning performance were secretly motivated by race or by his complaints of discrimination.  For this reason, summary judgment is due to be granted on Count I of Marable's complaint.

---

Mollohan, in the cited portion of his testimony (Doc. 81 at 16), simply states that some faculty members at MMI had facial hair, that facial hair was permitted as long as it was trimmed, and that Mollohan was not aware of a Sergeant Duke, a white male faculty member at MMI, having been reprimanded over grooming standards.  Tate, in the cited portion of his testimony, specifically denied ever recalling that Duke was "unshaven or unkempt."  (Doc. 82 at 34).  These cited portions of the evidentiary record simply do not serve, in any way, Marable's attempt to rebut MMI's alleged non-discriminatory reasons for not renewing his contract.

**2.)     Marable's Failure to Promote Claim (COUNT V)**

Marable claims that in October 2009, while employed as a TAC officer, he applied for the position of admissions counselor at MMI[3], a position for which he asserts he was the best qualified applicant.  (Doc. 95 at 3-4). Nevertheless, MMI hired Harry Howell, a 22 year-old white male, for the position.  Id. at 4.  Marable maintains that "his non-selection as the admissions counselor was both discriminatory and retaliatory due to his race, African American, and his advocacy of minority rights."  Id. at 24.  Marable also argues that Howell's selection "was inconsistent with policies and procedures of MMI, and State laws."  Id.

In his opposition to summary judgment, Marable does not dispute MMI's argument that the admissions counselor position was not a promotion because it did not confer a higher salary or other additional benefits than Marable's position as a TAC officer.  Doc. 71 at 28; Doc. 70-8 at 3 ("At the time in question, Mr. Marable was on the C3 salary schedule.  As an admissions counselor, he would have remained on the C3 salary schedule."); see also Doc. 86-1 (indicating that Marable was on the C3 salary schedule), Doc. 83-6 at 5 (indicating that Howell was on the C3 salary schedule). Marable also does not dispute the defendants' assertion that the admissions counselor position would not have resulted in any greater responsibility than

---

[3] Although Marable refers to the position as an "Enrollment Counselor," in some documents, he and the defendants also refer to the position as an "admissions counselor." For clarity's sake, the court refers to the position by the latter term.

he already had as a TAC officer.  Doc. 70-1 at 4; Doc. 70-8 at 3-4.  "A plaintiff asserting a failure to promote claim must be able to show that the position he desired had a greater wage or salary, a more distinguishable title, or significantly more responsibilities."  Johnson v. Fulton Concrete Co., 330 F.Supp.2d 1330, 1339 (N.D. Ga. 2004).

Furthermore, "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."  Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D. Ala. 2008) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).  Given Marable's lack of argument on this point, the court finds that Marable has abandoned his failure to promote claim.  Even absent this determination, the court finds that Marable failed to establish a prima facie case of discriminatory failure to promote.  Therefore, summary judgment is due to be granted to the defendants on Count V of Marable's complaint.

**C.    HOSTILE WORK ENVIRONMENT CLAIM (COUNT III)**

**1.)    Statement of the Law**

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir, 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

A plaintiff must show that (1) he belongs to a protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, such as race or national origin, (4) the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (5) the plaintiff's employer is responsible for such an environment, either directly or vicariously.  Miller, 277 F.3d at 1275.

In order to determine whether harassment meets the "severe and pervasive" requirement, the court must consider an additional four factors in order to evaluate the objective severity of the harassment, including (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance.  Medoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).  The employee must establish not only that he subjectively perceived the environment as hostile, but that a reasonable person would perceive the environment to be hostile and abusive.  Barrow v. Georgia Pacific, Inc., 144 Fed. Appx. 54, 56 (11th Cir. 2005).

Furthermore, "[t]his is not, and by its nature cannot be, a mathematically precise test."  Harris, 510 U.S. at 22.  Whether a work environment is hostile can be determined only by looking at all the circumstances.  Id. at 23.

### 2.)   Analysis

Marable claims that he was subjected to a racially hostile work environment during his employment at MMI.  (Doc. 1, p. 11).  Specifically, Marable testified that, on several occasions, Tate stated that black male cadets "needed to stay with their own kind," apparently meaning that they should stay away from white female cadets, and on several occasions stated his disapproval of white females dating black males.  (Doc. 80-1 at 52-53).  Marable also quoted Tate as saying on another occasion in 2008 or 2009 that his daughter "would never be with a nigger."  Id. at 52.  Marable also testified that Tate referred to a black cadet as a "thug," allegedly telling Marable "well, he is black, isn't he?" Id. at 61.

The word "nigger" certainly qualifies as an offensive utterance; however, the fact that Tate allegedly said this word in Marable's presence on one occasion does not tend to prove that MMI was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [Marable's] employment and create an abusive working environment." Barrow, 144 Fed. Appx. at 54 (quoting Harris, 510 U.S. at 21) (plaintiffs failed to establish a hostile working environment where one of the plaintiffs was called "nigger" three times in one year).

The same reasoning applies with regard to Tate's allegedly referring on one occasion to a black cadet as a "thug;" with regard to Tate's alleged

disapproval of interracial dating; and with regard to his purported opinion that black male cadets should "stay with their own kind." (Doc. 80-1 at 52-53). Such comments, while certainly offensive, are not sufficient for Marable to establish a <u>prima facie</u> case of a hostile work environment. <u>See</u> <u>Barrow</u>, 144 Fed. Appx. at 57-58. (African American plaintiffs failed to establish a hostile working environment despite testimony of racial epithets scrawled on bathroom walls, use of the word "nigger," displaying of the Confederate flag, a noose found in an employee's locker, multiple threats from a supervisor that he was going to kick the plaintiff's "black ass," and a threat by another supervisor that if he looked at a white girl he would "cut" him).

Accordingly, the defendants' motion for summary judgment with regard to Count III of Marable's complaint is due to be granted.

## D.    § 1983 CLAIMS (COUNTS II and IV)

Two of Marable's claims are brought pursuant to 42 U.S.C. § 1983. The first is a First Amendment retaliation claim (Count II) and the second is an Equal Protection hostile work environment claim (Count IV). The defendants argue that MMI is entitled to absolute immunity from the § 1983 claims because MMI is "an arm of the State of Alabama," and "is not a 'person' subject to suit under § 1983." (Doc. 71 at 24 and 26 n.16). The defendants also argue that Tate is entitled to qualified immunity on both of these counts. <u>Id.</u> at 25.

Marable did not dispute the defendants' absolute immunity argument in his opposition to summary judgment. <u>See</u> Doc. 95. "Grounds alleged in the

complaint but not relied upon in summary judgment are deemed abandoned."
Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D. Ala. 2008) (citing
Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).
Accordingly, the court finds that MMI enjoys absolute immunity from Counts
II and IV of Marable's complaint, and the defendants' summary judgment
motion is granted as to MMI on these counts.  The court now turns to
Marable's § 1983 claims as they pertain to Tate.

### 1.)        § 1983 First Amendment Retaliation Claim (COUNT II)

It is well established that, to set forth a claim of retaliation, a public
employee must show: (1) he was speaking as a citizen on a matter of public
concern; (2) his interests as a citizen outweighed the interests of the State as
an employer; and (3) the speech played a substantial or motivating role in the
adverse employment action.  Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir.
2007); Akins v. Fulton County, 420 F.3d 1293, 1303 (11th Cir.2005)[4].  If the
plaintiff establishes these elements, the burden shifts to the defendant to
prove it would have made the same adverse employment decision absent the
employee's speech.  Id. (citing Akins at 1303).  The first two elements are

---

[4] In the plaintiff's opposition brief, under a heading titled "First Amendment
Claims," Marable cited the Title VII retaliation elements set forth in Stavropoulos v.
Firestone, 361 F.3d 610, 616 (11th Cir. 2004).  This standard is not the same as that
required for a First Amendment claim.  Miller v. Univ. of S. Ala., 2010 WL 1994910,
*8 (S.D. Ala. 2010).  Indeed, it appears that plaintiff's counsel has conflated entirely
her client's Title VII retaliation claim with his First Amendment claim and
submitted one argument for both claims.  See Doc. 95 at 7-24.  Although Marable
cited both Standard v. A.B.E.L., 161 F.3d 1318, 1330 (11th Cir. 1998) and Brown v.
M.A.R.T.A., 261 Fed. Appx. 167, 174 (11th Cir. 2008), neither case states that a §
1983 First Amendment retaliation claim should be analyzed under the same
framework as a Title VII retaliation claim.

questions of law that the court decides.  Id. (citing Bryson v. City of
Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989)).  The court must examine
the statements at issue and the circumstances under which they are made to
determine whether or not there is First Amendment protection.  Id.

 To determine whether a public employee's speech is on a matter of
public concern, the court takes into account "the content, form, and context"
of the speech to glean its "main thrust."  Id. at 755.  (citations omitted).  If the
"main thrust" of the speech is on a matter that can be "fairly considered as
relating to any matter of political, social, or other concern to the community,"
then the speech is protected.  Rodin v. City of Coral Springs, Florida, 229
Fed. Appx. 849, 852 (11th Cir. 2007) (citing Fikes v. City of Daphne, 79 F.3d
1079, 1083 (11th Cir. 1996).

 If, on the other hand, the public employee spoke pursuant to his job
duties, then the speech is not protected.  Garcetti v. Ceballos, 547 U.S. 410,
421 (2006); Abdur-Rahman v. Walker, 567 F.3d 1278, 1282 (11th Cir. 2009).
Other relevant but not dispositive factors which come into play are (1)
whether the employee's speech occurred in the workplace, (2) whether the
subject matter of the speech concerned the employee's job, and (3) whether
the speech was given to a limited audience or as part of a public dialogue.
Abdur-Rahman v. Walker, 567 F.3d 1278, 1282 (11th Cir. 2009); Anderson v.
Burke County, Ga., 39 F.3d 1216, 1221 (11th Cir., 2001) (where plaintiff
limited an employment questionnaire's audience to candidates for the local

county board of commissioners, the court found that "[b]ecause of this limited audience, plaintiff's argument that he was addressing a public concern garners less weight in our balancing process.").

The speech at issue in this case covered two general categories: (1) Marable's complaints about the treatment of African-American cadets; and (2) Marable's complaints about his own treatment.  (Doc. 95 at 9) ("[Marable's] complaints not only addressed concerns of discriminatory practices related to students, but discriminatory and retaliatory acts against him.").  As an initial matter, the court finds that Marable's complaints about his own treatment do not qualify as protected speech on a matter of public concern because it "was driven by [his] own entirely rational self-interest in improving the conditions of [his] employment … [and were] centered around [his] private matters, not matters of social interest."  Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993).

Regarding Marable's complaints about the treatment of cadets, the court finds that all the factors discussed above weigh against Marable's having spoken out on a matter of public concern.  Marable has not alleged that he complained publicly about alleged discrimination against black cadets at MMI.  Rather, he asserts that he aired his complaints to Mollahan, Tate, Steiger, McGee, and Hastings, all of whom were either MMI administrators or faculty.  (Doc. 95 at 2-3).  Furthermore, this limited audience garners reduced weight in the court's analysis.  See Anderson at 1221.

37

The court also agrees with the defendants' argument that any complaints related to the treatment of cadets was not protected speech because it was part of Marable's official duties as a TAC officer.  (Doc. 105 at 14).  See, e.g., Abdur-Rahman, 567 F.3d 1278 (compliance inspectors for public works department who complained to supervisors about improper reporting of sewer overflows to state authorities and over flow related violations of environmental laws spoke pursuant to job duties and not as citizens); D'Angelo v. School Board of Polk County, Florida, 497 F.3d 1203 (11th Cir. 2007) (statements made by principal in connection with effort to convert school to charter status were made pursuant to his official duties as principal and hence not protected by First Amendment); Williams v. Dallas Independent School Dist., 480 F.3d 689 (5th Cir. 2007) (coach's speech questioning handling of school athletic funds was made in course of performing his employment, rather than as a citizen and thus not protected by First Amendment); Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed. Appx. 66 (2d Cir. 2008) (special education school counselor's communications regarding lack of physical education and art classes at satellite facility concerned tasks she was paid to perform, and thus were not protected speech for purposes of First Amendment retaliation claim); Houlihan v. Sussex Technical School Dist., 461 F.Supp.2d 252 (D.Del. 2006) (school psychologist's statements concerning school's alleged noncompliance with Individuals with Disabilities Education Act were made in connection with her official duties as

school psychologist and therefore lay outside First Amendment protection); Manigualte v. C.W. Post of Long Island University, 659 F.Supp.2d 367, 379 (E.D.N.Y. 2009) ("teachers who complain to their superiors on behalf of students are speaking in their official duties as educators and the complaints are not protected speech.")

The court finds no merit to Marable's bald, conclusory assertions that his complaints that were "outside of his job duties" and that his "advocacy of students went beyond required reporting duties." (Doc. 95 at 10). Marable offers no evidence other than (1) a general citation to his own self-serving affidavit, with no page or paragraph number indicated, and (2) a citation to the deposition testimony of Dennis L. Hastings, MMI's Director of Enrollment Management. (Doc. 81-1 at 9, 14). The court has already addressed myriad problems with Marable's affidavit, supra, including his repeated failure to appropriately reference the page and paragraph that allegedly supports his argument. Additionally, Hastings testified that Marable's complaints "w[ere] never about him, only about his students and how they were being treated," (Doc. 81-1 at 9), which suggests that Marable was speaking within the scope of his duties as a TAC officer. Furthermore, Hastings was an MMI administrator and constituted a limited audience of one. See Anderson at 1221.

Thus, the court finds that Marable has failed to show that he was speaking as a private citizen on a matter of public concern, and therefore has

39

failed to establish a <u>prima facie</u> claim of First Amendment retaliation under §

1983.  Therefore, summary judgment is due to be granted in favor of Tate as

to Count II.

### 3.)   § 1983 Equal Protection Claim (COUNT IV)

Tate is entitled to qualified immunity on Marable's § 1983 Equal

Protection claim.  Qualified immunity protects government officials performing

discretionary functions from civil liability. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800,

818 (1982).  Whether an official is entitled to qualified immunity is a two-step

inquiry: (1) whether the facts alleged show the officer's conduct violated a

constitutional right, and (2) whether that right was clearly established. <u>Saucier</u>

<u>v. Katz</u>, 533 U.S. 194, 201 (2001).  A district court is "permitted to exercise [its]

sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the

particular case at hand."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

Marable cannot show that Tate violated a right that was clearly

established under the equal protection clause.  "The right to be free from

retaliation is clearly established as a <u>first amendment</u> right and as a <u>statutory</u>

right under Title VII; but no clearly established right exists under the <u>equal</u>

<u>protection</u> clause to be free from retaliation."  <u>Ratliff v. DeKalb County, Ga.</u>, 62

F.3d 338, 340 (11th Cir. 1995).  Therefore, summary judgment is due to be

granted in favor of Tate on Marable's § 1983 Equal Protection claim (Count

IV).

**E.      State Law Claims Against MMI (COUNT VI)**

In his opposition brief, Marable neglected to address the defendants' argument regarding his state law claim for negligent and/or wanton training and/or supervision.  <u>See</u> Doc. 95.  "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."  <u>Shamburger v. City of Mobile</u>, 2008 WL 2874363 at *1 (S.D. Ala. 2008) (<u>citing</u> <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 592 (11th Cir. 1995)).  Therefore, the court finds that summary judgment is due to be granted in the defendants' favor with regard to Count VI of Marable's complaint.

<b>CONCLUSION</b>

For the reasons stated herein, defendant's motion for summary judgment is **GRANTED** as to all claims. Costs are taxed to plaintiff.

**DONE** and **ORDERED** this 5th day of November 2012.

/s/ Callie V. S. Granade
**UNITED STATES DISTRICT JUDGE**